# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

Gary P. DeCicco,

      Defendant.

Case No. 1:18-cr-10013-RGS

## DEFENDANT GARY DECICCO'S OPPOSITION TO GOVERNMENT'S MOTION FOR (1) REVOCATION OF RELEASE OF GARY DECICCO PURSUANT TO 18 U.S.C. § 3148(b), (2) PRETRIAL DETENTION OF DECICCO, PURSUANT TO 18 U.S.C. § 3148(b); AND (3) FORFEITURE OF DECICCO'S BAIL, PURSUANT TO RULE 46(f) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The Government seeks to revoke Defendant Gary DeCicco's supervised release, detain him pending trial, and forfeit his $50,000 bail without any evidence that he harmed anyone or that he presents an ongoing danger to anyone. Mr. DeCicco has attempted to follow the conditions of his release and presents no danger to the community. He respectfully suggests that there is a set of conditions that can guarantee his appearance in court, as outlined in his Motion to Modify Conditions.

## I.      Background

Mr. DeCicco is charged with various counts relating to an alleged mortgage and insurance fraud scheme. The original Indictment in this case was filed shortly before a jury trial at which Mr. DeCicco was acquitted on an unrelated extortion charge. See United States v. DeCicco, No. 1:17-cr-10092-NMG. After his acquittal, the Court released Mr. DeCicco pending trial in this matter. His conditions of release included, among other conditions, "[n]o new lines of credit; [n]o transfer of assets > $1K w/o notice to USAO with the exception of ordinary

- 1 -

personal expenses; no buying or selling of assets in names of others; [d]o not hide or dissipate assets." See Docket No. 47. Gary is also required to "continue or actively seek employment . . . as approved by PTS – No Real Estate Sales." Id. Those conditions were subsequently modified to allow Mr. DeCicco to sell assets after notice to the Government "of any accepted offer" with an opportunity for the Government to object to the sale. See Docket No. 94. At a hearing on modifying the conditions of Gary's release, the Court confirmed that it would be unwieldy to require notice during the negotiation stage of any proposed sale. Instead, the Court preferred to require notice when the parties were "dealing with something concrete" and there was a "specific deal that we're working with." 11/29/18 Tr. 8:15-18.

Return of Mr. DeCicco's Corvette

Prior to March 2017, long before the original Indictment in this case, Gary DeCicco bought a Corvette from his friend Jeff Carroll. When Gary was detained pending trial on the charges for which he was acquitted, he had the car registered to Lynnway Auto Sales, a dealership that was attempting to a arrange a sale on Gary's behalf.

Gary was acquitted in his previous trial on June 12, 2018, and was released from custody. In the interim, the Corvette had not sold, so Gary decided to take it off the market. Jeff Carroll agreed to act as an intermediary for the transfer of the car back to Gary's possession, as Gary was precluded from dealing with the owner of Lynnway Auto by the conditions of his bail, as he was listed as a potential witness in the case. Gary paid no money to regain possession of his Corvette. Rather, Mr. Carroll transferred the title to Mr. DeCicco and personally paid the $1,250 in sales tax he—incorrectly—believed was due.

The Corvette is Damaged in an Accident

On November 13, 2018, Gary was in an accident while driving the Corvette. Gary took the Corvette to Cal's Auto Body in Winthrop, where it remains in need of repair. GPS data confirms that Gary then travelled to an Enterprise Rental Car location on Route 60 in Revere, where Gary rented a car to drive in lieu of the Corvette. Based on its own assessment of the damages, Commerce Insurance sent Mr. DeCicco a check in the amount of $7,138.78 to cover the cost of repairs, plus approximately $500 for a rental car. Gary used $6,100 of the funds from Commerce to acquire a used Cadillac for his daughter to drive. He did not put the car in his daughter's name as he did not want to transfer assets out of his name to his daughter. Mr. DeCicco's net worth remained the same after the transaction: he now has a damaged Corvette and a used Cadillac rather than an undamaged Corvette.

Commerce Insurance apparently also paid $400 to Cal's Auto Body for the cost of towing the car. After Cal's Auto Body informed Commerce that the car had not been towed, Cal's returned the $400. None of this money benefitted or was intended to benefit Mr. DeCicco.

Thayer Avenue

Pamela Avedisian, Mr. DeCicco's co-defendant and mother of his daughter, Linda, owned a 50% interest in a partnership that owned property located at 7 and 29 Thayer Avenue in Revere, MA. Ms. Avedisian wanted to sell her interest in the property to raise funds to pay her living expenses. Mr. Fautz was interested in purchasing the property. Ms. Avedisian, Anthony and Joel DeLuca, her partners in the partnership which owned the property, and Mr. Fautz, the buyer, were each represented by counsel. Mr. DeCicco, in an effort to assist Ms. Avedesian and to attempt to gain funds to hire an attorney, assisted in the negotiation of the deal. He was not paid for his services.

In the course of negotiating the deal, Mr. DeCicco, who has extensive experience in permitting and managing marinas, discussed the possibility of becoming a consultant to the buyer of the property <u>after</u> the sale of the property had been consummated.   No final agreement was ever reached.

Ms. Avedisian's proposed sale of her property was discussed with this Court.   <u>See</u> 11/29/18 Tr. 12:2-8.   When the agreement became concrete and documents were signed, Ms. Avedisian, through her attorney, sought permission of the Court to sell the property.   <u>See</u> Docket No. 107.   The Court granted permission.   <u>See</u> Docket No. 115.   Despite the Court's permission, all but $25,000 of the funds due to Ms. Avedisian have yet to be transferred to her.

Although Mr. DeCicco dealt primarily with Ms. Avedisian on this transaction through her attorney, Mr. DiMento, he did have very minimal contact with Ms. Avedisian in order to connect her personally with the buyer of the property.   The contact was momentary and non-substantive.

## II.   Argument

Revocation of release is appropriate only if (1) the Court finds there is either "probable cause to believe that the [Defendant] has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the [Defendant] violated any other condition of release," <u>and</u> (2) the Court finds, based on the factors set forth in 18 U.S.C. § 3142(g), "there is no condition or combination of conditions of release that will assure that the [Defendant] will not flee or pose a danger to the safety of any other person or the community" or "the person is unlikely to abide by any condition or combination of conditions of release." <u>See</u> 18 U.S.C. § 3148(b).   Although a finding of probable cause to believe that a Defendant has committed a crime or violated a condition of release creates a rebuttable presumption that no set of conditions will ensure that the Defendant poses no risk to the community, that presumption is readily overcome if the Defendant produces "only 'some evidence' to rebut it." <u>See United States v.</u>

Gennaco, 834 F. Supp. 2d 38, 40 (D. Mass. 2011) (quoting United States v. Dillon, 938 F.2d 1412, 1216 (1st Cir. 1991)). The Government retains the burden of persuasion, although the rebutted presumption retains some weight. Gennaco, 834 F. Supp. 2d at 40.

Revocation is unnecessary in this case. First, the Government has not proven that Mr. DeCicco violated any laws. With respect to his conditions of release, the only condition that there is proof he violated was having minimal contact with Ms. Avedisian. This technical violation should not result in revocation. Second, it is clear that Mr. DeCicco is not a flight risk or a danger to the community and a reasonable set of conditions exist that will adequately ensure Mr. DeCicco's compliance.

### A.  There is No Evidence That Mr. DeCicco Violated His Conditions of Release or Any Criminal Laws

The Government's motion is rife with speculation and inuendo, but short on any actual evidence that Gary has violated his conditions of release or any federal laws.

### 1.  Gary Did Not Purchase a Corvette for $20,000

The Government alleges Gary purchased a Corvette from Boston Street Auto Sales for $20,000 on August 17, 2018. The Government is mistaken. As Jeff Carroll has already explained to Government agents, he sold the Corvette to Gary no later than March 2017, before Gary was detained on the prior extortion charge. Jeff then helped return the car to Gary's possession after he was released from custody. Jeff, not Gary, mistakenly believed that sales taxes were due, and Jeff paid those taxes. Despite the Government's assertion that Gary was evading taxes by, allegedly, purchasing a car, Jeff actually likely overpaid taxes by paying sales taxes that were not owed.

### 2.      Gary Did Not Commit Insurance Fraud

The Government does not dispute that Gary was in an accident that damaged the Corvette. Indeed, the Corvette is damaged and is located at Cal's Auto Body in Winthrop, where it is available for inspection. Gary's GPS data demonstrates that he visited a rental car agency on the day of the accident.

Instead, the Government surmises that Gary conspired to commit insurance fraud because Cal's Auto Body erroneously submitted a towing invoice to Gary's insurer. Gary did not stand to benefit from the towing claim, which was paid directly to Cal's Auto Body. In any event, Cal's Auto Body has corrected the error and returned the payment. There is no evidence that anyone at Cal's Auto Body engaged in insurance fraud, let alone that Gary conspired with them for no benefit to himself.

### 3.      Gary Did Not Transfer or Dissipate Assets

The Government asserts that Gary's purchase of a vehicle with a portion of the insurance proceeds after his Corvette was damaged is a violation of Condition 7(s), which in relevant part prohibits Gary from any "transfer of assets > $1K w/o notice to USAO with the exception of ordinary personal expenses" or from "dissipat[ing] assets." Docket No. 47. Gary purchased the Cadillac for his daughter to use, but in an effort to comply with Condition 7(s), which also requires that he not "buy[ ] or sell[ ] assets in names of others," he purchased the Cadillac under his own name. Contrary to the Government's contention that this transaction was a clear violation of Condition 7(s), it is not at all clear that Gary was required to provide notice to the Government when using cash proceeds from an auto accident to acquire an asset.[1] Gary did not

---

[1] In any event, it is unlikely the Government would object to Gary using insurance proceeds to purchase another vehicle after an accident, and the Government does not assert otherwise in its Motion.

dissipate any assets. He did not "transfer" any assets. He exchanged money for a Cadillac, which he still owns. The transaction is unlike frivolous spending on non-durable goods, which ultimately take money out of the reach of the Government. In the event Gary is convicted and the Government seeks forfeiture of substitute assets, the Cadillac remains among Gary's assets available for possible forfeiture.

### 4.    Gary Did Not Violate Any Conditions Concerning Employment or Sales of Real Estate

It is difficult to discern what aspects of the Thayer Ave deal the Government contends violated Gary's conditions of release. After all, the deal has now been finalized (with the exception of the transfer of $200,000 to Ms. Avedisian), to which the Government assented.[2] Although the Government is plainly suspicious of the deal, as it is of everything Gary does, it has not identified any actual violations of Gary's release conditions in connection with the sale.

To the extent the Government claims the sale itself violated any of Gary's conditions of release, the Government has simply misunderstood those conditions. Gary is not subject to a blanket prohibition on "participating in real estate sales." Gov. Mot. at 11. He is prohibited from "employment" without the prior approval of Probation, and may not be employed in "Real Estate Sales." See Docket No. 47. As the Government described Condition 7(b) at Gary's detention hearing, "whatever employment he has should not involve buying or selling real estate or businesses or anything like that." 6/13/18 Tr. 8:14-16. Gary has adhered to that condition, working at a marina and avoiding any employment in real estate sales. Gary was not employed by any party to the Thayer Avenue deal. He negotiated the deal on behalf of the mother of his daughter, and received no remuneration for his role in the transaction.

---

[2] The Government did, however, seek a condition that no money from the sale benefit Mr. DeCicco. That condition will be the subject of another motion.

Nor did Gary "fail to provide notice" to the Government regarding the Thayer Avenue deal.[3] Mot. at 3. As the Court made clear, there is no reason for Gary to notify the Government or the Court about any proposed transactions until they are in the final stages. 11/29/18 Tr. 8:15-18. To require otherwise would waste a good deal of the Government's and the Court's time. The deal was disclosed to both the Government and the Court at the appropriate time. 11/29/18 Tr. 12:4-8.

The Government likewise mischaracterizes Gary's conditions of release in arguing that Gary violated the prohibition on selling assets in the names of others. Mot. at 11. This condition is intended to prohibit Gary from selling his assets under the names of other individuals. That is again made clear by the Government's own description of the condition. The Government stated at the detention hearing that Gary is prohibited from "buying or selling of assets in the names of others and no hiding or dissipating of assets." 6/13/18 Tr. 8:8-9. In other words, the prohibition on buying and selling is tied to the prohibition on dissipating assets. Gary is not permitted to dissipate his own assets, whether by selling them in his name or by selling them under the names of other individuals. Gary did not sell his own asset in the Thayer Avenue deal. Ms. Avedisian's lawyer has confirmed to the Court that the property belonged to his client. 11/29/18 Tr. 12:4-8.

Finally, the Government has failed to show that Gary violated any condition of release when he discussed a possible consulting agreement with the Thayer Avenue buyer. The

---

[3] The Government also insinuates that there is something sinister about the timing of prior counsel's motions to withdraw, which were filed the same day the Government first inquired about the Thayer Ave deal. This pure speculation on the part of the Government is an excellent example of how deep the Government is digging to find a reason – any reason – to detain Gary after his acquittal in 2018. As the Court is aware, an ex parte hearing on the motions to withdraw was held on August 16, 2018, and counsel's stated reasons for withdrawing had nothing to do with the Thayer Avenue transaction.

Government mischaracterizes that agreement as "a payment related to the sale," Mot. at 12, but it was in fact a separate proposed agreement whereby Gary would be paid for consulting services in the process of developing the property after the sale of the property, as is evidenced by the fact that no agreement with Mr. DeCicco was in place at the time of the sale and the terms of any consulting agreement were never finalized or agreed. Nor is there any evidence that Gary sought the consulting agreement in an attempt to evade taxes. The contemplated agreement would have been documented and payments to Gary would be subject to a 1099.

**5.  The Government's Remaining Specious Allegations Do Not Warrant Detention**

The Government's final two allegations do not warrant revoking Gary's release. The Government contends Gary has had contact with his co-defendant, who is also his ex-girlfriend and the mother of his child. It is almost impossible for Gary to avoid having any contact at all with his daughter's mother, particularly indirect contact. His daughter works for Gary and lives with her mother – some incidental contact is inevitable. Mr. DeCicco is separately moving to remove this condition, which is neither necessary nor feasible.

The Government's last allegation is frankly bizarre, and a further example of the lengths it is willing to go to detain Gary. The Government alleges Gary had a discussion with the Thayer Ave buyer in which he threatened to sue the prosecutor for interfering with the transaction, and asked the buyer to sign a statement stating that the Government had contacted him to interfere with the sale. Astoundingly, the Government considers this conversation, if it even occurred, to be an attempt to suborn perjury and to obstruct justice merely because the Government disagrees with Gary on the facts. There is no evidence that Gary ever asked anyone to sign a statement that Gary knew or believed to be false. The Government did contact the buyer, which did delay the transaction and continues to do so, whether intentionally or not. No

prosecutor reasonably could be threatened by, and no investigation could be impeded by, such an idle remark, which is unlikely to go anywhere in light of prosecutor's immunity from suit.

**B.     Detention is Not Warranted in this Case**

Even if Gary had violated the law or any of his conditions of release, detention is not a foregone conclusion. Detention is unwarranted unless the Court also finds, based on the factors set forth in 18 U.S.C. § 3142(g), there is no set of conditions of release that will reasonably assure Gary "will not flee or pose a danger to the safety of any other person or the community" or that Gary "is unlikely to abide by any condition or combination of conditions of release." See 18 U.S.C. § 3148(b). Pretrial detention is disfavored, and the Congress "clear[ly] inten[ded] that only a limited number of defendants be subject to pretrial detention." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990). There is no reason to think that Gary is a risk of flight or a danger to the community. Moreover, Gary is likely to continue to abide by a reasonable set of conditions of release.

**1.     Gary Is Not a Risk of Flight and Is Not a Danger to the Community**

There is no reason to think that Gary would flee, and the Government does not suggest otherwise. Gary is a lifelong Massachusetts resident with strong ties to the community. See 18 U.S.C. § 3142(g)(3)(A). His two daughters live in the district. Gary also owns a business in Winthrop and holds significant real estate in the Boston area. Notably, Gary has stood trial on two prior occasions, resulting in an acquittal or dismissal of the most serious charges, and he has always appeared. Gary is eager to clear his name once again after a trial on this newest set of charges, and he will be present in court when required.

Moreover, Gary is not a danger to the community. One of the factors for the Court to consider is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). Gary is not charged with a crime of violence, as

the Government acknowledges.  Instead, the Government's sole argument that Gary presents a risk of physical harm to anyone is that he was previously accused of extortion.  The Government cannot ask the Court to forego its own assessment of whether Gary presents a danger to the community, and simply adopt the detention decision of another Court in a different matter, in which Gary was acquitted.  The Government criticizes Gary for not contesting its allegations of violence in that case, but in fact he did contest all allegations of criminal conduct by entering a plea of not guilty to the charges.  Of course, it was the Government that bore the burden of proof.  The Government failed to prove its case and Gary was acquitted in record time.  Although the Government has clearly been investigating him ever since his acquittal, it makes <u>no</u> allegation that Gary has engaged in violence of any kind since his release.  Gary should not be detained in this matter simply because he was detained pending trial on unrelated charges, of which he was acquitted, without any evidence that he has engaged in violent behavior since that time.

Acknowledging it has no evidence that Gary presents a risk of violence, the Government principally argues that potential economic—not physical—harm to the community warrants pretrial detention.  The dangerousness inquiry is not a question of whether the safety of the community can be "absolutely guaranteed," but rather whether it can be "reasonably assured." <u>See</u> <u>Tortora</u>, 922 F.2d at 884.  Although economic harm can justify pretrial detention, "most cases considering economic danger either find the evidence lacking or ultimately denied bail based on flight risk," a factor that is not at issue in Gary's case.  <u>See</u> <u>United States v. Possino</u>, No. CR 13-00048-SVW-3(JEM), 2013 WL 1415108, at *8 (C.D. Cal. Apr. 8, 2013).

The evidence that Gary presents an economic danger is scant at best.  The Government's primary allegation of "economic harm" is that Gary purportedly transferred assets without the Government's permission and attempted to "conduct business transactions" through his co-

Defendant.  Mot. at 13.  Although those allegations, if true, might violate Gary's conditions of release, they are not allegations that Gary inflicted economic harm on anyone in the community. Indeed, although the Court in <u>Persaud</u> (which the Government cites in its brief) recognized that economic danger could warrant detention, it questioned why "extensive financial disclosures are reasonably necessary to ensure Defendant's appearance or to protect the community." <u>United States v. Persaud</u>, No. 05-cr-368, 2007 WL 1074906, at *1 (W.D.N.Y. Apr. 5, 2007).  Likewise, the Government's assertion that Gary attempted to obtain funding "under the table" through unspecified "various nefarious means" is too vague and conclusory to justify depriving Gary of his liberty.

**2.  Gary Can and Will Abide by a Reasonable Combination of Conditions of Release**

There exists a reasonable set of conditions that will ensure Gary's presence at trial without an undue deprivation of his liberty.  The Court has already imposed a significant bail package.  Although Gary believes a few modifications are appropriate as detailed in his separate motion, there is no reason to believe that he cannot abide by a reasonable set of conditions.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Government's Motion for Revocation of Release of Gary DeCicco Pursuant to 18 U.S.C. § 3148(b), (2) Pretrial Detention of DeCicco, Pursuant to 18 U.S.C. § 3148(b), and (3) Forfeiture of DeCicco's Bail, Pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure.

Dated: March 15, 2019                      Respectfully submitted,

GARY DECICCO

By his attorneys,

- 12 -

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
Fax: (617) 273-8004
tminer@mosllp.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on counsel for the Government on March 15, 2019.

*/s/ Tracy A. Miner*
Tracy A. Miner

- 13 -