UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 18-10013-RGS

UNITED STATES OF AMERICA

v.

GARY P. DECICCO and
PAMELA M. AVEDISIAN

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO SEVER COUNTS

March 19, 2020

STEARNS, D.J.

In this clumsily structured sixteen-count indictment, two separate but related conspiracies are charged against defendants Gary DeCicco and Pamela Avedisian. Counts 1 and 2 charge DeCicco and Avedisian with wire fraud arising out of the short sale of a home at 321 Nahant Road in Nahant, Massachusetts. Counts 15 and 16 charge DeCicco and Avedisian with conspiring to impede the efforts of the Internal Revenue Service (IRS) to assess and collect federal income taxes owed by DeCicco, arising from the profits of various business ventures on which he and Avedisian had collaborated during their common-law marriage. Sandwiched between the two conspiracies are twelve counts (Counts 3 through 14) variously charging DeCicco with bank fraud and conspiracy to commit bank fraud, wire fraud, and unlawful monetary transactions. Avedisian is not charged in any of

these counts, and her name is barely mentioned in the narrative: In Count 3 she is said to have signed a check that was used to repay an unnamed coconspirator of DeCicco's for an investment in a DeCicco real estate project styled as The Mills at Pulaski, LLC;[1] in Count 7, a damaged Maserati that figured in a dispute between DeCicco and his insurer is said to have been registered in Avedisian's name. Nothing else of substance is alleged against Avedisian.

In a joint motion, DeCicco and Avedisian seek to sever the indictment into four separate trials as follows: (1) the wire fraud scheme concerning the short sale of the 321 Nahant property, involving both defendants (Counts 1 and 2); (2) the tax fraud scheme involving both defendants (Counts 15 and 16); (3) the bank fraud conspiracy and the unlawful monetary transactions involving DeCicco and an unnamed co-conspirator who together acquired a mortgage loan secured by 58 Pulaski (Counts 3-4 and 9-14); and (4) the wire fraud and attempted wire fraud attributed to a scheme devised by DeCicco to submit false invoices to his insurance companies seeking payouts on two sunken boats and the damaged Maserati (Counts 5-8).

---

[1] In addition, numbered paragraph 24, incorporated by reference into Count 3, explains that after the conclusion of the conspiracy charged in Count 3, Avedisian and DeCicco (a) transferred money into a Bank of America account held in the name of the Mills at Pulaski, LLC; and (b) signed a revised offer on 321 Nahant. Numbered paragraph 39 states, without any suggestion of its significance, that prior to the date of the alleged conspiracy, "both AVEDISIAN and DECICCO were identified as members of 58 Pulaski LLC."

Neither defendant objects to the joining of Counts 1 and 2, or Counts 15 and 16 (each set pairing a conspiracy count with a related substantive count). Rather, the defendants contend that the government's effort to prosecute the four groupings of counts in one trial violates Fed. R. Crim. P. 8. They further contend that even if the requirements of Rule 8 are met, "a single trial would unfairly prejudice defendants under Rule 14." Dkt # 203 at 8. The government takes the position that the joinder of all four groupings of counts is proper because all of the charged offenses "constitute parts of a common scheme or plan, that is, Defendants' conspiracy to defraud the IRS and evade the payment of taxes owed by DeCicco."[2] Dkt # 210 at 9. The government also argues that joinder is appropriate because "there is substantial overlap in the evidence" among the groupings of counts." *Id.*

Joinder of charges under Rule 8 and severance under Rule 14.

"[T]he general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *United States v. DeCologero*, 530 F.3d 36, 52 (1st Cir. 2008), quoting *United States v. Soto-Beníquez*, 356 F.3d 1, 29 (1st Cir. 2003).

---

[2] A common scheme can mean a series of acts or omissions motivated by a purpose to accomplish a single criminal objective, or it can mean the effectuation of a common purpose or plan that results in the repeated commission of the same offense. In either sense, it is usually understood to involve the same set of actors motivated by a common purpose. Neither of these familiar aspects of a common scheme are charged as an overarching continuing conspiracy. The only common thread in the indictment is the generic allegation of fraudulent motive.

Federal Rule of Criminal Procedure 8(a) governs joinder of offenses, while Rule 8(b) governs joinder of defendants. "Although, on its face, Rule 8(a) is not confined to single-defendant indictments, most courts have taken the position that it is so limited and, where more than one defendant is involved, Rule 8(b) alone provides the appropriate standards for joinder." *United States v. Turkette*, 632 F.2d 896, 907 (1st Cir. 1980), *rev'd on other grounds*, 452 U.S. 576 (1981); *see also King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966) ("Rule 8(b) is not to be implemented by Rule 8(a)."). Rule 8(b) provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Under the rule, the government may charge serial transactions, and indict persons jointly, on the basis of what it reasonably anticipates being able to prove against the defendants, collectively, measured as of the time the indictment is handed up." *United States v. Natanel*, 938 F.2d 302, 306 (1st Cir. 1991). In determining whether counts are properly joined under Rule 8(b), a court is to consider whether there is "some relatedness between offenses [because this] is necessary for there to be a series of acts or transactions." *Turkette*, 632 F.2d at 907. "Relatedness of offenses can be

4

established by demonstrating that essentially the same facts must be shown for each of the consolidated crimes." *United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35, 60 (1st Cir. 1991), quoting *Turkette*, 632 F.2d at 907-908.

As previously noted, considerations of judicial efficiency favor joint trials, and as a rule, a conspiracy allegation is ordinarily enough of a connecting link between multiple offenses to permit joinder. *United States v. Rehal*, 940 F.2d 1, 3 (1st Cir. 1991). However, a court may sever defendants' trials "if 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *DeCologero*, 530 F.3d at 52, quoting *Zafiro v. United States,* 506 U.S. 534, 539 (1993); *see also* Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). Nonetheless, "the quantum of prejudice that typifies virtually any multi-defendant trial . . . clearly does not justify a severance." *United States v. Pierro*, 32 F.3d 611, 615 (1st Cir. 1994).

1. <u>Joinder of Counts 1-2 with Counts 15-16</u>.

Counts 1 and 2, and 15 and 16, name both DeCicco and Avedisian. Counts 1 and 2 relate to the short sale conspiracy. Count 1 charges a conspiracy in 2016 "to reduce the mortgage debt owed on 321 Nahant by engaging in a sham short sale of the property from AVEDISIAN to DECICCO," Dkt # 99, ¶ 14, using wire communication in interstate commerce. Count 2 involves an allegedly fraudulent wire transfer of $571,850 from the account of "Closing Attorney 2" at Citizens Bank Massachusetts to a Wells Fargo Bank account in California in connection with the execution of the scheme alleged in Count 1. Separately, Count 15 alleges that from April of 2012 to December of 2017, Avedisian and DeCicco "conspired with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the IRS, an agency of the United States, in ascertaining, computing, assessing and collecting federal income taxes." *Id.* ¶ 77. Count 16 charges tax evasion covering the same time period. The joinder of Counts

1 and 2 is clearly proper under Rule 8(b),[3] as is joinder of Counts 15 and 16.[4]

These two sets of counts are also sufficiently related to one another within the meaning of Rule 8(b). The short sale scheme and tax evasion scheme clearly share a basis in fact: DeCicco and Avedisian's dealings with respect to the purchase of Atlantis Marina Docs, LLC, and The Mills at Pulaski, LLC, are central to the government's ability to prove defendants'

---

[3] In Count 1, the government alleges that Avedisian, DeCicco, and unnamed co-conspirators conspired to submit false statements to Nationstar, a mortgage lending company, to obtain the approval of a short sale of the 321 Nahant property. Dkt #99, ¶¶ 13-14, 21. The false statements included, among other representations, that Avedisian and DeCicco were "unrelated and unaffiliated by family, marriage, or commercial enterprise," *id.* ¶ 21, and that Avedisian was living at 321 Nahant when in fact she was not. *Id.* ¶¶ 18-19, 24.

[4] In Count 15, the government alleges that beginning in 2012, DeCicco misrepresented to the IRS his inability to pay outstanding tax liability for the tax years 2008, 2009, 2010, and 2011, despite having the assets to do so. As alleged in the indictment, from April of 2012 through December of 2017, DeCicco and Avedisian allegedly concealed information about their incomes, assets, and financial transactions from the IRS in part by "putting such income, transactions and assets in the names of others, including AVEDISIAN," including the 321 Nahant property, Dkt #99, ¶ 78; ¶ 79(v). The funds that DeCicco had used to purchase 321 Nahant allegedly came from money that Avedisian had "loaned" to DeCicco in connection with the purchase of the Atlantis Marina in Winthrop, MA in September of 2016. *Id.* ¶ 32. The government also alleges that DeCicco concealed the purchase, sale, and ownership of various luxury automobiles and a yacht through the use of a "Class 2 Massachusetts Dealer License (Class 2 Dealer License) of Lynnway Auto Sales Inc. (Lynnway)," *id.* ¶ 69, and use of Avedisian's name (impliedly with her consent). Count 16 embroiders on the same theme.

participation in a common scheme to frustrate the collection efforts of the IRS. In pursuit of this end, the juggling of funds among bank accounts alleged in ¶ 24 of the indictment is incorporated into each of counts 1, 2, 15, and 16. Moreover, the "purchase" of 321 Nahant – the object of the short-scale scheme – is alleged as an overt act "in furtherance of the tax conspiracy charged in Count 15." Dkt # 210 at 9; *see also* Dkt # 99, ¶ 79(v).[5] Accordingly, evidence proving the short sale scheme will inevitably overlap with evidence necessary to prove the tax fraud conspiracy. *See United States v. Alemany Rivera*, 781 F.2d 229, 236 (1st Cir. 1985) (finding terms of Rule 8(b) met where "the evidence necessary to prove that [a defendant engaged in practices relevant to certain counts of an indictment] overlapped with the evidence necessary to prove the frauds alleged in the remaining counts of the indictment.").

---

[5] The defendants argue that the short sale of 321 Nahant is not related to the tax conspiracy because the short sale scheme did not aim to hide DeCicco's assets from the IRS. *See* Dkt # 211 at 4-5 ("To the contrary, the short sale of 321 Nahant transferred that property into Mr. DeCicco's name, making it an asset potentially available to satisfy the outstanding IRS debt."). This argument misses the mark. The short sale scheme, which concluded in December of 2016 reduced the mortgage debt owed by DeCicco on 321 Nahant, which yielded him a financial benefit. Dkt # 99, ¶¶ 32, 34. However, DeCicco made only two of the required monthly IRS payments from December of 2016 onward, *see id.* ¶ 75, indicating no intent on his part to use the illegally acquired funds to satisfy the IRS debt.

The temporal interconnectedness of the two schemes further supports the government's assertion that there will be evidentiary overlap. The short sale scheme and the associated wire fraud charge are alleged to have occurred in 2016 – within the 2012-2017 timeframe of the alleged tax conspiracy and the associated tax evasion charge. *Compare United States v. Sabean*, 885 F.3d 27, 43 (1st Cir. 2018) (addressing Rule 8(a) and noting that "temporal and factual commonality weighs heavily in favor of allowing joinder"), *with United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996) (finding joinder of tax crimes and other offenses improper under Rule 8(a) where (unlike here) the relationship between the tax crimes and other charged offenses was "pure happenstance").

Nor would the joining of Counts 1 and 2 with Counts 15 and 16 offend Rule 14. Defendants first argue that "[t]he spillover prejudice of introducing evidence that defendants traded in luxury vehicles, boats, or properties risks a miscarriage of justice in any trial of the bank or insurance frauds." Dkt # 203 at 12. The evidence is what it is, and any inherent risk of prejudice that might arise from defendants' allegedly sumptuous tastes can be addressed by an appropriate jury instruction. *See United States v. Zimny*, 873 F.3d 38, 60 (1st Cir. 2017).

Defendants next contend that Avedisian's anticipated defense of lack

9

of knowledge of DeCicco's tax fraud would "likely . . . prejudice the defendants' right to a fair trial beyond that which any jury instruction can cure." Dkt # 203 at 14. Even assuming that Avedisian's defense is somehow irreconcilable with DeCicco's (there is no suggestion that she intends to shift all blame to him), "it is well settled that 'antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other.'" *United States v. Talavera*, 668 F.2d 625, 630 (1st Cir. 1982), quoting *United States v. Davis*, 623 F.2d 188, 194 (1st Cir. 1980). "Severance is required only where the conflict is so prejudicial, and the defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates [guilt]." *Talavera*, 668 F.2d at 630. Defendants' off-the-shelf allegation of conflicting defenses does not meet this high bar.

2. Remaining counts

Count 3 charges a conspiracy between DeCicco and an unnamed co-conspirator #3 (CC-3) "to obtain a mortgage loan secured by 58 Pulaski by falsely stating, among other things, that the rental income from 58 Pulaski was approximately thirty percent higher than the actual rental income." Dkt # 99, ¶ 42. Count 4 charges bank fraud in connection with a mortgage taken on 58 Pulaski between October 2015 and September 2016, referred to

in Count 3. Counts 9-14 charge a series of unlawful monetary transactions involving proceeds of the bank fraud conspiracy involving CC-3 alleged in Count 3. Avedisian is charged in none of these counts.[6]

Counts 5 through 8 allege wire fraud and attempted wire fraud against DeCicco alone in the period from February of 2016 through December of 2016. Counts 5 and 6 relate to DeCicco's submission of an allegedly false invoice to Insurer 1 for $32,000, allegedly involving the salvage of a sunken lobster boat. Count 7 relates to DeCicco's reporting of damage to a Maserati held in Avedisian's name by means of bogus invoices causing Insurer 2 "to give DECICCO and AVEDISIAN credit for the wheels, and in or around March 2017, paid $24,437.50 to AVEDISIAN for the totaled Maserati." *Id.* ¶ 61. Count 8 is predicated upon DeCicco's falsely informing Insurer 3 that the U.S. Coast Guard had ordered DeCicco to salvage a sunken Blackfin boat. *Id.* ¶ 62.

The court's decision is to sever for trial purposes Counts 1 and 2 and 15 and 16, in which both Avedisian and DeCicco are named, from Counts 3 through 14, in which only DeCicco is charged.[7] The reasons for a severance

---

[7] The court will defer a decision as to whether Counts 5-8 are properly joined with Counts 3-4 and 9-14. Defendants (more particularly DeCicco) do not contest the joinder of Counts 3-4 or the joinder of those Counts with Counts 9-14.

11

can be simply stated. Severance is appropriate, first, to avoid any potential prejudicial spillover as to Avedisian. As is clear from the above recitation of facts, Avedisian is alleged to have played no role, or at least one not worth the ink of an indictment, in any of the counts in which only DeCicco is named. These DeCicco-only counts describe factually intricate schemes involving sunken boats and damage to a luxury car that appear to only minimally overlap with the schemes in which the two defendants are charged jointly.[8] "Where, as in this case, the overlap between the . . . schemes, in terms of evidence to be presented at trial, seems slight, the concerns of judicial economy balance lightly against the dangers of jury confusion and conviction based on propensity evidence." *United States v. Buchanan*, 930 F. Supp. 657, 668 (D. Mass. 1996).[9]

---

[8] The court acknowledges the government's argument that Counts 3 and 4, insofar as they involve 58 Pulaski, are related to Counts 15 and 16 alleging tax fraud, because "the purported sale of 58 Pulaski that forms the basis for the bank fraud and bank fraud conspiracy charged in Counts 3 and 4[] [is] alleged as [an] overt act[] in furtherance of the tax conspiracy charged in Count 15." Dkt # 210 at 9. The severance, however, has no impact on the government's ability to introduce evidence as background during the trial of the codefendants. The point of the severance is not to prejudice the government in its ability to prove its case against DeCicco, but to avoid any unnecessary collateral damage to Avedisian in the process.

[9] In light of current events and their likely impact on the immediate future, I would also think it in the public interest to do all that we can to avoid prolonged jury trials when possible, owing to public health concerns. As noted recently by lawyers in the United Kingdom, "jurors are having to drop

ORDER

The motion to sever is <u>ALLOWED</u> in part and <u>DENIED</u> in part. The court will approve the joinder of Counts 1, 2, 15, and 16; the government is permitted to try DeCicco and Avedisian together for those counts. The court defers to a later date judgment on the propriety of joining the remaining counts insofar as they concern DeCicco alone.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

---

out of cases because they are self-isolating or, worse, coming to court when they should not, and thereby putting everyone's health at risk." Clive Coleman, *Coronavirus: No jury trials longer than three days in England and Wales*, BBC News (Mar. 18, 2020), https://www.bbc.com/news/uk-51935320.